# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:17-cr-054 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| ANTWAN CRISWELL, | : | |
| | : | |
| Defendant. | : | |

## ORDER:
### (1) GRANTING MOTION TO DISMISS UNDER THE SPEEDY TRIAL ACT;
### (2) DISMISSING CHARGES WITHOUT PREJUDICE; AND
### (3) DENYING MOTION TO DISMISS UNDER THE SIXTH AMENDMENT

This criminal case is before the Court on Defendant's motions to dismiss under the Speedy Trial Act and the Sixth Amendment (Docs. 24, 27) and the parties' responsive memoranda (Docs. 25, 26, 28).

## I. BACKGROUND

On May 18, 2017, Defendant Antwan Criswell was charged by way of a seven-count indictment with the following drug trafficking and firearm offenses: distribution and attempt to distribute controlled substances and mixtures (including heroin, fentanyl, and carfentanil), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846 (Counts 1, 4, and 6); using or carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (Count 2); and possession of a firearm by a prohibited person (*i.e.*, a convicted felon), in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Counts 3, 5, 7).  (Doc. 3).

As charged, Count 2 carries a mandatory minimum of five years imprisonment up to life. 18 U.S.C. § 924(c)(1)(A)(i). Defendant also faces terms of imprisonment of up to twenty years on each controlled substance offense (Counts 1, 4, 6) and up to ten years for each count of felon in possession of a firearm (Counts 3, 5, 7). 21 U.S.C. § 841(b)(1)(C); 18 U.S.C. § 924(a)(2).

Defendant's initial appearance on the indictment occurred on May 25, 2017. (Doc. 8). At that time, the Government moved for Defendant's detention pending trial. (Doc. 30 at 7). Defendant objected to pretrial detention and affirmed his desire to proceed with a detention hearing, pursuant to 18 U.S.C. § 3142(f). (*Id*.) Defendant was ordered temporarily detained pending the detention hearing, which hearing was set for May 30, 2017, based on the availability of the parties and the Pretrial Officer. (Docs. 8, 11). The Court set arraignment for the same day. (Doc. 8).

On May 30, 2017, Defendant's arraignment and detention hearing proceeded as scheduled before the federal magistrate judge. (Doc. 12). As to arraignment, Defendant entered pleas of not guilty as to all counts of the Indictment. (*Id*.) As to Defendant's detention, the magistrate judge found that no conditions of bond would assure the safety of any person or the community if Defendant were released, nor would any conditions assure Defendant's subsequent appearance in court as required. (Doc. 13 at 1). The magistrate judge noted the severe penalties applicable to the charged offenses, as well as Defendant's prior criminal history, including prior failures to appear in court as ordered, prior attempts to evade law enforcement, and prior violations while under supervision. (*Id*. at 1-2). Accordingly, Defendant was ordered detained pending trial. (*Id*.)

On June 2, 2017, this Court held Defendant's preliminary pretrial conference. (Min. Entry, June 2, 2017). During the conference, the Court set a trial calendar pursuant to the requirements of the Speedy Trial Act and the requests of the parties. (Doc. 15). Specifically, the Court set a status report deadline of June 23, 2017, a pretrial motion filing deadline of June 26, 2017, and a jury trial commencing on August 7, 2017. (*Id.*)

As required, on June 23, 2017, the Court received Defendant's status report via email from defense counsel.[1] The status report stated as follows:

> I am writing to provide an update on Mr. Criswell's case. The government and <u>Mr. Criswell are in active plea negotiations at this time and it appears as though the case will likely get resolved pretrial</u>. I know that we have a pending motions deadline this Monday. I am going to see Mr. Criswell this afternoon to discuss that deadline (as well as the trial date) and the logic of filing a motion to continue everything. If I confirm with him that a continuance is in fact his desire, I will file a formal motion with the Court on Monday morning.

(Email Status Report, June 23, 2017) (emphasis added).

On June 26, 2017, Defendant filed a motion for a four-week extension of the motion filing deadline. (Doc. 16). Defense counsel explained that "additional time is needed to engage in negotiations with the government and see if a pretrial disposition can be reached." (*Id*. at 1). Moreover, defense counsel stated that she and Defendant had

---

[1] The Court's Calendar Order instructed defense counsel to submit the status report to the Court via email, with copy to opposing counsel. (Doc. 15). It is this Court's practice to accept email submissions of not only status reports, but also certain requests for action (*e.g.*, requests for a continuance or to schedule a hearing). The Court's adoption of this practice is a courtesy extended to counsel in all cases, in an effort to relieve some burden on practicing attorneys by offering an easier, informal manner for disposing of commonplace case management tasks. Notably, the continued viability of this practice requires practitioners to act in good faith and to remain diligent in abiding by orders and deadlines.

reviewed the discovery—which the Government provided on June 2, 2017—and were still determining how to proceed in the case. (*Id.*) Although Defendant did not, at that time, request a new trial date, the motion stated that "[s]hould [Defendant] ultimately determine that pretrial motions are necessary, he understands that the filing of said motions will result in a continuance of the current trial date." (*Id.*)

On July 7, 2017, the Court granted Defendant's motion and extended the motion filing deadline to July 24, 2017. (Not. Order, July 7, 2017). In its Notation Order granting Defendant's motion, the Court specifically noted that plea negotiations—which were characterized as active and ongoing both in Defendant's June 23, 2017 email status report and in his June 26, 2017 motion—serve to exclude time under the Speedy Trial Act. *United States v. Montgomery*, 395 F. App'x 177, 182 (6th Cir. 2010) ("plea negotiations are an example of 'other proceedings' not specifically listed in § 3161(h)(1) which may be excluded from the Speedy Trial Act calculation").[2] The Court additionally made an ends-of-justice finding, pursuant to 18 U.S.C. § 3161(h)(7)(A), (B)(i) and (iv), stating that "failure to grant the continuance would deprive the parties of adequate time to

_____

[2] The Court's Notation Order stated that the time elapsing from June 26, 2017 (*i.e.*, the date of Defendant's motion) until July 24, 2017, was excludable due to ongoing plea negotiations. (Not. Order, July 7, 2017). However, Defendant's June 23, 2017 email status report conveyed that the parties were already engaged in active plea negotiations. Thus, the Court's statement as to when the excludable period commenced should have reflected an earlier date of at least June 23, 2017. *See* n.6 *infra*. But the Court's statement is not determinative as to the proper exclusionary period, because "other proceedings" under 18 U.S.C. § 3161(h)(1) are subject to <u>automatic exclusion</u>. *United States v. Tinklenberg*, 563 U.S. 647, 653-60 (2011) (holding that exclusion from the Speedy Trial computation is automatic for "periods of delay" under § 3161(h)(1), regardless of whether the period described would or did actually cause a delay of the trial); *Bloate v. United States*, 559 U.S. 196, 199 n.1 (2010) ("The excludability of delay 'resulting from … proceedings' under subsection (h)(1) is 'automatic' in the sense that a district court <u>must</u> exclude such delay from a Speedy Trial Act calculation …") (emphasis added).

work toward a pretrial resolution or alternatively prepare for trial and … would likely result in a miscarriage of justice." (Not. Order, July 7, 2017). Thus, time was tolled on the speedy trial clock until July 24, 2017. (*Id*.)

On July 24, 2017, Defendant once again moved for a four-week extension of the motion filing deadline. (Doc. 17). In his motion, Defendant explained that the parties had been engaged in ongoing plea negotiations, but stated that "[c]urrently, negotiations have broken down and … [t]hus, [Defendant] needs additional time to prepare for trial and determine what, if any, pretrial motions are necessary." (*Id*. at 1). Defendant acknowledged that his request to continue the motion deadline would now require a continuance of the August 7, 2017 trial date, and further noted that the Government had no objection to the continuance. (*Id*.)

Defendant's motion continued, however, to further request an order compelling the Government to provide video and audio recordings of Defendant's interactions with a confidential informant. (*Id*. at 2). Defense counsel stated that the Government refused to provide Defendant with the recordings, because the informant's face was visible. (*Id*.) Defendant acknowledged the Government's concern regarding the informant's identity and therefore stated he would not object to the informant's face being blocked or distorted in the videos. (*Id*.) Defendant did not represent that the Government had agreed to production under any such circumstances.[3]

---

[3] Assuming, as Defendant represented, that the Government's sole concern was the visibility of the informant's face, Defendant's acquiescence to a redacted recording should have resolved the issue and obviated the need for Defendant to move the Court to order production. But, the filing of the motion to compel, coupled with the absence of any statement as to the Government's

On July 25, 2017, this Court entered the following notation order:

> NOTATION ORDER: This case is before the Court on Defendant's omnibus motion for: (1) a four-week extension of the pretrial motion deadline; and (2) an order compelling the Government "to produce the video and audio recordings of [Defendant's] interactions with the confidential informant." (Doc. 17). **As to the request for a four-week extension of time,** which request is unopposed, Defendant states that the parties have been unable to reach a plea agreement and, accordingly, Defendant "needs additional time to prepare for trial and determine what, if any, pretrial motions are necessary." (Id.) Defendant acknowledges that an extension of the motion deadline will disrupt the trial date as well. (Id.) For good cause shown, and as the extension is unopposed, Defendant's motion for a four-week extension of the motion deadline is GRANTED. Accordingly, the Court hereby VACATES the previously established trial calendar (Doc. 15) and establishes a new motion filing deadline of 8/21/2017. The Court will confer with the parties to establish a new trial date after pretrial motions have been filed and resolved. **As to Defendant's request for an order compelling production of the recordings,** the Court establishes the following briefing schedule: the Government shall file a response on or before 8/14/2017; Defendant's reply (if any) shall be filed on or before 8/28/2017. Assuming the motion to compel is ultimately granted, and to the extent the recordings prove to be valuable in the preparation of Defendant's pretrial motions, Defendant is granted leave to request an additional extension as to those specific motions. As Defendant's motion to compel remains pending, the time elapsing from the date of the motion (7/24/2017), through resolution of the motion, shall be tolled pursuant to 18 U.S.C. § 3161(h)(1)(D). Additionally, the Court finds that the ends of justice served by granting Defendant's requested extension of the motion deadline, outweigh the interests of the public and Defendant in a speedy trial, as failure to grant such a continuance would deprive counsel of adequate time to prepare. Accordingly, the time elapsing from 7/24/2017 through 8/28/2017 is further TOLLED pursuant to 18 U.S.C. §

position, naturally required this Court to conclude that there was a remaining point of contention as to production, of which the Court was unaware.

3161(h)(7)(A), (B)(iv). IT IS SO ORDERED. Signed by Judge
Timothy S. Black.

(Not. Order, July 25, 2017) (bold in original; underline emphasis added).

On August 14, 2017, the Government filed a motion requesting a three-day

extension of its deadline to respond to Defendant's motion to compel.  (Doc. 18).  In

relevant part, the Government stated that it required additional time to determine whether

the video could be redacted adequately enough to resolve concerns for the informant's

safety.  (*Id.*)

Three days later, on August 17, 2017, the Government filed an unopposed motion

for a protective order.  (Doc. 19).  At that time, the Court had not yet acted on the

Government's motion for an extension of its response deadline.  However, the

Government's motion for a protective order noted that, while it disputed having any

obligation to provide the redacted recordings, "[s]hould the Court approve the proposed

protective order, the Government will promptly produce a redacted copy of the requested

videos to Defense counsel as requested."  (*Id.* at 1, 2).  In short, entry of the protective

order would effectively moot both Defendant's motion to compel (Doc. 17) and the

Government's motion for an extension of time to respond (Doc. 18).

On August 21, 2017, while the motion for a protective order was still pending,

Defendant filed a motion seeking leave to file pretrial motions after the receipt of

additional discovery.  (Doc. 20).  Notably, Defendant did not request an extension of

specified duration as he had previously done.  Rather, Defendant stated generally that he

required additional time, as he would not be in a position to meaningfully assess which

motions to file until he had received the redacted recordings.  (*Id*. at 2).  Defendant also

noted, for the first time, that he was awaiting the receipt of other items of discovery from

the Government.  (*Id*. at 1-2).

On August 31, 2017, Defendant also filed a motion for bond (Doc. 21), to which

the Government responded in opposition (Doc. 22).  Defendant did not file a reply in

support of his motion for bond.

The Court did not immediately act on Defendant's August 21, 2017 motion for

extension of the motion deadline.  From the Court's perspective, the notation order

entered on July 25, 2017 already granted Defendant leave to seek a later motion deadline

*if*, upon receipt and review of the recordings, Defendant found the additional discovery

warranted filing new or amended motions.  In other words, the Court was waiting for

Defendant to actually review the discovery and to notify the Court whether a new motion

deadline was needed.

To that end, the Court entered the protective order on September 22, 2017.  (Doc.

23).  Accordingly, as of September 23, 2017, the Government was in a position to

provide Defendant with the redacted recordings.  The Court continued to anticipate

hearing from the defense after the videos were reviewed.

On October 23, 2017, the Court received several *pro se* communications from

Defendant, including seven *pro se* motions, a letter to the Court, and more notably, two

letters intended for defense counsel.[4]  However, this Court does not accept *pro se* filings

---

[4] Although Defendant addressed and mailed the correspondence to the Court, two of the enclosed
letters were entitled "Questions for Lawyer."  Those letters detailed the motions Defendant

from represented parties.  Thus, pursuant to the Court's standard practice, on October 25, 2017, the Court reached out to defense counsel via email to inform her of Defendant's *pro se* communications.  The Court explained that it would send the originals back to Defendant and copies to defense counsel, and further offered to scan and email counsel the documents.  On October 30, 2017, defense counsel responded to the Court's email and stated that she believed Defendant had copied her on all communications already and the Court could simply send the originals back to her client.  Accordingly, on November 2, 2017, the Court proceeded to return the *pro se* communications to Defendant, with an accompanying letter explaining that the Court does not accept *pro se* filings from represented parties, clarifying that his attorney must submit filings on his behalf, and advising him to contact his counsel.  The Court then continued to await defense motions, particularly having now seen Defendant's clear desire that pretrial motions be filed.

In the first week of November 2017, the Court learned that defense counsel was out on medical leave and was not anticipated to return to work until the end of December 2017.[5]  Under the circumstances, the Court did not believe it was necessary to impose upon the Federal Public Defender's Office (the "FPD") to memorialize this status on the

---

wished to file, questions regarding his potential guideline computation, proposed defense strategies, and <u>acceptable outcomes for apparently ongoing plea negotiations</u>.  Although the contents of the letters were clearly intended for defense counsel, both concluded with the statement: "To your Honorable Judge Timothy S. Black which I hope reaches him or such filing to the Assistant United States Attorney."

[5] On November 6, 2017, Assistant Federal Public Defender Richard Monahan emailed the Court regarding an unrelated case assigned to Ms. Lockard.  In the email, Mr. Monahan advised the Court that Ms. Lockard had gone out on leave earlier than anticipated and was expected to return to the office toward the end of December 2017.  The Federal Public Defender's Office also filed motions to continue in other cases assigned to Ms. Lockard, but not in this case.

record, nor to require a formal request to continue the matter.  The Court assumed it would likely hear from defense counsel after the first of the year and was comfortable simply awaiting her return.

However, rather than timely informing the Court of completion of Defendant's discovery review, the defense's intentions regarding pretrial motions, or the status of plea negotiations, on January 23, 2018, Defendant filed a motion to dismiss the indictment based on violations of the Speedy Trial Act.  (Doc. 24).  The Court established a briefing schedule on the motion (Not. Order, Jan. 24, 2018), pursuant to which the Government responded in opposition (Doc. 25) and Defendant replied (Doc. 26).  On May 29, 2018, Defendant also filed a motion to dismiss based on speedy trial violations under the Sixth Amendment.  (Doc. 27).  The Government responded in opposition to this motion as well.  (Doc. 28).  No reply was filed.

Both motions to dismiss (Docs. 24, 27) are presently before the Court.

## II.  STANDARD OF REVIEW

### A.  Dismissal for Speedy Trial Act Violations

The Speedy Trial Act provides that, subject to certain periods of exclusion, the trial of a defendant who has pleaded not guilty to a charge in an information or indictment, "shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant … [appears before] the court in which such charge is pending, whichever date last occurs."  18 U.S.C. § 3161(c)(1), (h).

In the event that "a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2). Defendant carries the burden of proof as to the motion. *Id.*

"[I]f a meritorious and timely motion to dismiss is filed, the district court must dismiss the charges, though it may choose whether to dismiss with or without prejudice." *Zedner v. United States*, 547 U.S. 489, 499 (2006). In determining whether to dismiss with or without prejudice, "the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." 18 U.S.C. § 3162(a)(2).

**B. Dismissal for Sixth Amendment Speedy Trial Violation**

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial …." U.S. Const. amend. VI.

To determine whether a defendant has been denied his Sixth Amendment right to a speedy trial, the Court must consider four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertions of his right; and (4) prejudice to the defendant. *United States v. Young*, 657 F.3d 408, 414 (6th Cir. 2011) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). In contrast to the remedies available for violation of the Speedy Trial Act, "the proper remedy for a violation of a defendant's constitutional speedy-trial rights is dismissal of the indictment with prejudice." *Id.* at 413.

### III.  ANALYSIS

Defendant seeks dismissal of the Indictment with prejudice, arguing that the delay since commencement of this case has resulted in violation of the Speedy Trial Act and has further deprived him of his Sixth Amendment right to a speedy trial.  (Docs. 24, 27).  The Government opposes both motions.  (Docs. 25, 28).

As to the motion to dismiss for violation of the Speedy Trial Act, the Government argues that, much like the Court, it anticipated that Defendant would file pretrial motions and, further, that the Government understood the Court's July 25, 2017 notation order as affording Defendant time to review additional discovery before filing said motions.  (Doc. 25).  The Government further notes that the parties had recommenced plea negotiations around October 25, 2017, and that negotiations were in fact occurring when Defendant filed the motion to dismiss.  (*Id*. at 4-6).  Finally, the Government argues that while a technical violation may have occurred, the appropriate remedy should be dismissal of the indictment without prejudice.  (*Id*.)  Defendant argues in his reply, however, that the Government was negligent in producing discovery and tracking speedy trial time in this case and, therefore, dismissal with prejudice is warranted.  (Doc. 26).

As to the motion to dismiss under the Sixth Amendment, the Government argues that the delay in this case has not been excessive, particularly given the portion of the delay attributable to Defendant.  (Doc. 28).  Moreover, the Government argues that the delay is neither attributable to bad faith on its part, nor has it been an attempt to seek a tactical advantage.  (*Id*.)  Finally, the Government argues Defendant has not been prejudiced by the delay.  (*Id*.)

As stated more fully below, the Court finds that a technical violation of the Speedy Trial Act has occurred, but that the violation does not warrant dismissal with prejudice. Moreover, the Court finds that there has been no violation of Defendant's Sixth Amendment right to a speedy trial.

## A. The Speedy Trial Act

### 1. Computation of Time

While the Speedy Trial Act requires trial to commence within seventy-days from the later of either the date of the indictment or a defendant's initial appearance, the Act excludes certain period of time from that seventy-day computation. 18 U.S.C. § 3161(h). Specifically:

> Section 3161(h) specifies the types of delays that are excludable from the calculation. Some of these delays are excludable only if the district court makes certain findings enumerated in the statute. *See* § 3161(h)(7). <u>Other delays are automatically excludable, *i.e.*, they may be excluded without district court findings. As relevant here, **subsection (h)(1) requires the automatic exclusion of '[a]ny period of delay resulting from other proceedings concerning the defendant, including *but not limited to*'** periods of delay resulting from [(h)(1)'s] eight enumerated subcategories of proceedings</u>.

*Bloate v. United States*, 559 U.S. 196, 203 (2010) (emphasis added). "[P]lea negotiations are an example of 'other proceedings' not specifically listed in § 3161(h)(1) which may be excluded from the Speedy Trial Act calculation." *Montgomery*, 395 F. App'x at 182.

Here, the speedy trial clock began to run following Defendant's May 25, 2017 initial appearance. However, at that hearing, the Government orally moved for pretrial detention, which motion required a hearing. The detention hearing was held on May 30,

2017, at which time Defendant was ordered detained pending trial. Thus, the speedy trial clock was automatically tolled from May 25, 2017 through the May 30, 2017 hearing and disposition of the Government's motion. 18 U.S.C. § 3161(h)(1)(D). Accordingly, May 31, 2017 was the first day run on the speedy trial clock.

Excluding the day of the preliminary pretrial conference (June 2, 2017), **twenty-two days** ran on the speedy trial clock from May 31, 2017 through June 23, 2017.

On June 23, 2017, the Court received a status report from defense counsel via email, which report stated that the parties were engaged "in active plea negotiations" and that counsel was already confident the case would likely resolve pretrial. Moreover, Defendant filed a motion for extension of time on June 26, 2017, in which the defense re-confirmed that plea negotiations were ongoing. (Doc. 16). Given the status of active negotiations, time was subject to automatic exclusion, beginning on June 23, 2017, <u>at the latest</u>.[6] 18 U.S.C. § 3161(h)(1).

Additionally, the Court granted Defendant's two motions for extension of time (Docs. 16, 17) and entered ends-of-justice findings as to both, thereby tolling time from June 26, 2017 through August 28, 2017. (Not. Orders, July 7, 2017 & July 25, 2017). Further motions filed by the parties also tolled time to various extents throughout August and September 2017. (Docs. 18, 19, 20, 21).

---

[6] The Court has no evidence before it indicating the date plea negotiations officially began. Therefore, while it is reasonable to conclude that plea negotiations commenced prior to June 23, 2017, the Court extends Defendant the benefit of the latest possible date (*i.e.*, June 23, 2017).

Notably, the Government filed a motion for a protective order (Doc. 19) on August 17, 2017, and the Court entered the protective order on September 22, 2017 (Doc. 23). Accordingly, that motion tolled time from August 17, 2017 through September 17, 2017, and time was again tolled upon the Court's entry of the protective order on September 22, 2017. 18 U.S.C. § 3161(h)(1)(D), (H). The five intervening days, however, were excludable on other grounds.

Specifically, on August 31, 2017, Defendant filed a motion for bond (Doc. 21), to which the Government filed a response in opposition on September 6, 2017 (Doc. 22). Although Defendant did not file a reply, the Court had every reason to assume that a reply was forthcoming. Accordingly, Defendant's motion for bond was not ripe for decision until after Defendant's reply deadline ran on September 20, 2017.[7] *United States v. Henderson*, 476 U.S. 321, 329 (1986) (stating that a motion is not "actually under advisement" until after "the court receives all the papers it reasonably expects"). Even assuming that no hearing or additional information was required, an additional 30-days was excludable thereafter, during which the motion was under advisement. Thus, the time elapsing from August 31, 2017 through October 20, 2017 was tolled, pursuant to 18 U.S.C. § 3161(h)(1)(D), (H).

Time began to run again on October 21, 2017, *i.e.*, day twenty-three of the speedy trial clock and continued to run until October 24, 2017, *i.e.*, **day twenty-six** on the clock.

---

[7] Pursuant to this Court's Criminal Procedures Standing Order, "[a]ll motions shall be briefed according to S.D. Ohio Civ. R. 7.2(a)(2)," which allows twenty-one days for a response in opposition and fourteen days for a reply. Criminal Procedures Form, Judge Timothy S. Black Standing Orders, available at: http://www.ohsd.uscourts.gov/FPBlack.

Time once again automatically tolled on October 25, 2017, when defense counsel reached out to the Government to reopen plea negotiations. (Doc. 28-1 at 10).[8] Defense counsel sent another email regarding plea negotiations on October 31, 2017, which email also references a telephone conversation on October 26, 2017. (*Id.* at 11). On November 3, 2017, the Government emailed defense counsel regarding plea negotiations, and also copied Assistant Federal Public Defender Richard Monahan, knowing that Ms. Lockard had just gone out on medical leave. (*Id.* at 15).

In that email, the Government indicates its position on offering Defendant a better deal and further indicates that the prosecutor has spoken to her supervisors regarding the negotiations as well. (*Id.*) Again acknowledging Ms. Lockard's absence, the prosecutor offers to continue plea negotiations with Ms. Lockard's colleagues and even provides her cell phone number to Mr. Monahan, stating: "I'd be happy to get you up to speed and talk about the reasoning behind the decision [regarding the plea offer]." (*Id.*)

On November 6, 2017, Mr. Monahan responded to the Government's email, stating that the preference of their office would be to defer the case until Ms. Lockard's return, but they needed to meet with Defendant first to "kind of see where he wants to go from here … [and] see if [he] can wait until [Ms. Lockard] gets back to proceed with [the] case." (*Id.*) Mr. Monahan tells the prosecutor that, although he is not yet certain

---

[8] The Government's response in opposition to Defendant's motion to dismiss on Sixth Amendment grounds included copies of various email exchanges between the parties. The Government's response suggests that the attached emails do not constitute the entirety of plea discussions. (Doc. 28 at 3-4). However, it does not appear that negotiations would sufficiently eliminate the technical speedy trial violation.

who will meet with Defendant, he "will keep [her] posted after [someone has] had a chance to meet with [Defendant]…." (*Id.*) The Government states that this was the last communication received until Ms. Lockard returned to work in January 2018. (Doc. 28 at 4).

Based on the email communications, the Court concludes that plea negotiations were ongoing from October 25, 2017 (*i.e.*, when defense counsel requested a meeting to discuss further plea negotiations) until at least November 3, 2017 (*i.e.*, when the prosecutor emailed defense counsel regarding the Government's terms in order for Defendant to obtain a better deal). Accordingly, time was automatically tolled during this time.

However, given the circumstances, the speedy trial clock technically restarted on November 4, 2017, which constituted day **twenty-seven**.

Based on this computation, day **seventy** on the speedy trial clock ran on Sunday, December 17, 2017. Accordingly, even if plea negotiations occurred upon Ms. Lockard's return in January 2018, time had already expired on the speedy trial clock.

### 2. *Remedy*

Having found that a technical violation of the Speedy Trial Act has occurred, the Court must now determine whether to dismiss the charges with or without prejudice. 18 U.S.C. § 3162(a)(2). In making its determination, the Court must consider the following factors: (1) the seriousness of the offense; (2) the facts and circumstances that led to the dismissal; and (3) the impact of a re-prosecution on the administration of the Speedy Trial Act and on the administration of justice. 18 U.S.C. § 3162(a)(2).

### i.  Seriousness of the Offense

"[The Sixth] Circuit has found [drug and firearm offenses] to be serious in assessing whether to dismiss a claim with or without prejudice due to a Speedy Trial Act violation." *Sylvester v. United States*, 868 F.3d 503, 512 (6th Cir. 2017) () (collecting cases).

Here, Defendant is charged in a seven-count indictment with attempt to distribute and distribution of heroin, fentanyl, and carfentanil, as well as possession of a firearm by a prohibited person and in furtherance of a drug trafficking offense.  (Doc. 3).  These offenses are unquestionably serious.  Indeed, Defendant does not dispute this conclusion.  (Doc. 26 at 2).

Accordingly, the first factor weighs in favor of dismissal without prejudice.

### ii.  Facts and Circumstances Leading to Dismissal

In assessing the facts and circumstances leading to dismissal, the Court looks to the occurrences leading to the passage of more than seventy non-excludable days, up to the date of the motion to dismiss.  *United States v. Sherer*, 770 F.3d 407, 411 (6th Cir. 2014) (joining other circuits in finding that "a motion for dismissal [under the Speedy Trial Act] is effective only for periods of time which antedate [its] filing … [and therefore the] court need only consider alleged delay which occurs prior to and including the date on which the motion is made") (citations omitted).

Based on the Court's calculation, *supra*, the point at which the speedy trial clock began to run unchecked was after November 4, 2017.  Notably, this was the point at which defense counsel was recently out on leave.  Based on the Government's emails, it

is apparent that the prosecutor reached out to Ms. Lockard and Mr. Monahan, in an effort to keep the case moving forward. The email response to the prosecutor clearly indicated, in the absence of any objection from Defendant, the FPD intended to defer the case and await Ms. Lockard's return. The email response also stated that the FPD would be in touch with the Government after meeting with Defendant. No further communications were received until after the speedy trial clock had run.

This Court recognizes that Defendant "has no duty to bring himself to trial and has no duty to bring any delay to the court's attention." *United States v. Moss*, 217 F.3d 426, 431 (6th Cir. 2000). However, "[d]efendants who passively wait for the speedy trial clock to run have [a lesser right] to dismissal with prejudice than do defendants who unsuccessfully demand prompt attention." *Id.* (citations omitted).

Moreover, Defendant does bear responsibility to keep the Court and opposing party apprised as to his own intentions and status, particularly where he has promised to do so or where it is clear that such communications are expected. The Sixth Circuit specifically noted in *Moss* that the case was distinguishable from the Sixth Circuit's prior opinion in *United States v. Pierce*, 17 F.3d 146 (6th Cir. 1994), "because the *Pierce* court was waiting to receive information from the defendant, while … *Moss* was waiting to receive a substantive opinion from the court." *Moss*, 217 F.3d at 431.

Further, defense counsel certainly has an ethical obligation not to mislead the Court and opposing counsel. Here, defense counsel states that as of November 3, 2017, the defense had "copies of all of the discovery that was necessary to evaluate the case." (Doc. 26 at 3). Defense counsel also acknowledges that, "[a]fter receiving the discovery

in full, [Defendant] and his counsel decided not to file pretrial motions ….” (*Id.*)
Finally, defense counsel readily admits that, even while physically out of the office
during her maternity leave, she maintained constant communication (presumably on other
cases) via email and telephone, and that she in fact received the Government's November
3, 2017 email the day it was sent. (*Id.* at 6). Regardless, defense counsel said nothing to
opposing counsel or to the Court regarding Defendant's decision not to file motions,
opting instead to "passively wait for the speedy trial clock to run." *Moss*, 217 F.3d at
431.

Regardless, however, this Court recognizes its own role in the delay leading to
dismissal. Ironically, the error leading to the speedy trial violation first arose because this
Court left pending Defendant's August 21, 2017 motion seeking an open-ended
continuance. From the Court's perspective, Defendant's request for additional time was
entirely reasonable and warranted. The issue, however, was that the Court viewed
Defendant's motion as effectively resolved by the July 25, 2017 Notation Order, in which
Defendant was already granted leave to file motions after reviewing discovery. Thus, the
Court expected that Defendant would proceed to review discovery and inform the Court
if and when he was prepared to file pretrial motions or establish a trial calendar.

Moreover, based on the facts and circumstances known to the Court, the amount
of time that had passed did not raise any alerts. Specifically, the Court knew that
Defendant faced a number of very significant charges, exposing him to a substantial term
of incarceration if convicted. The Court also knew that Defendant needed time to review
additional discovery, which discovery Defendant would receive after the protective order

was entered on September 22, 2017. The Court also communicated with defense counsel directly on October 25, 2017, with regard to Defendant's *pro se* motions. At no point during this exchange did defense counsel express any uncertainty as to whether she would be permitted to file late motions on Defendant's behalf, nor did she give any indication that she did not intend to file motions (which would have clearly contradicted Defendant's wishes, as expressed in his *pro se* correspondence). Shortly thereafter, the Court became aware that defense counsel was out on maternity leave and would not be returning to the office for several weeks. Under the circumstances, the Court did not consider imposing upon defense counsel or her colleagues for a formal status report. The Court expected it would hear from defense counsel upon her return or would be informed if there were any issues in the interim.

Admittedly, the sound approach would have been for this Court to formally rule on Defendant's August 21, 2017 motion, once again grant leave to file motions after reviewing discovery, and to memorialize that ruling with a new ends-of-justice finding, just as this Court had done on two prior occasions. However, the Court relied upon its belief that Defendant was working to move his case forward and that any issues would be brought to the Court's attention. The Court was mistaken in this regard, as was the Government.

This Court agrees that a technical violation of the Speedy Trial Act occurred. This Court also finds that both the Court and the Government would have been wise to utilize a strict, formulaic approach, rather than relying on their assumptions of good faith. However, the reason for the delay, at its core, was that the Court and the Government

mistakenly believed they were awaiting either a motion or an update from Defendant. Thus, defense counsel's failure to communicate was a significant contributing factor in the delay.

### iii. Impact of Re-Prosecution on the Speedy Trial Act and the Administration of Justice

"The main considerations that the courts have taken into account when examining this factor are whether the defendant suffered actual prejudice as a result of the delay and whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act." *United States v. Gross*, 432 F. App'x 490, 494 (6th Cir. 2011) (quoting *United States v. Robinson*, 389 F.3d 589 (6th Cir. 2004)).

Here, as discussed more fully, *infra*, the Court finds that the Government did not engage in prosecutorial misconduct, did not act in bad faith, and was not negligent in producing discovery or tracking speedy trial. Moreover, Defendant does not assert any specific trial prejudice.

While Defendant does assert non-trial prejudice, this argument lacks merit as to the Speedy Trial Act. Specifically, Defendant's pretrial incarceration was not prolonged by the delay occurring prior to the date of his Speedy Trial Act motion. Indeed, assuming the Court had granted Defendant's open-ended motion for a continuance, taking into account defense counsel's absence until late-December, and assuming the case was set for trial on a schedule consistent with the Court's computation, *supra*, Defendant's trial would not have taken place before January 23, 2018.

Based upon the foregoing, the Court concludes that a technical violation of the Speedy Trial Act has occurred and, therefore, dismissal is required pursuant to 18 U.S.C. § 3162(a)(2). Moreover, having thoroughly considered the statutory factors, the Court finds that the dismissal shall be without prejudice.

## B. Sixth Amendment Right to a Speedy Trial

To determine whether Defendant has been deprived of his Sixth Amendment right to a speedy trial, the Court must consider: (1) the length of delay; (2) the reason for the delay; (3) Defendant's assertion of his right; and (4) prejudice to Defendant. *Barker*, 407 U.S. at 530. No one factor is a "necessary or sufficient condition to the finding of a deprivation of the right of speedy trial … [but] [r]ather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533.

As to the **first** factor, the length of the delay serves as a "triggering mechanism" and, if the length is not "presumptively prejudicial," the Court is not required to undertake the remainder of *Barker* analysis. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992); *Barker*, 407 U.S. at 530–31. "[B]ecause of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530. However, the Sixth Circuit has held "delays over one year are 'uncommonly long.'" *United States v. Baugh*, 605 F. App'x 488, 491 (6th Cir. 2015) (citing *United States v. Bass,* 460 F.3d 830, 836 (6th Cir. 2006)).

Here, such a delay exists. However, the delay does not automatically require dismissal of the case with prejudice, but serves only to trigger examination of the

remaining factors.  Thus, the Court must undertake an analysis of the remaining *Barker* factors.

The **second** factor is reason for the delay.  The United States Supreme Court has made clear that "different weights are to be assigned to different reasons for delay." *Doggett*, 505 U.S. at 657.  At its core, this factor seeks to determine "whether the government or the criminal defendant is more to blame for th[e] delay."  *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (quoting *Doggett*, 505 U.S. at 651);

As the Supreme Court explained in *Barker*:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government.  A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.  Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531.  Naturally, "delay caused by the defense weighs against the defendant," which includes delay attributable to defense counsel.  *Brillon*, 556 U.S. at 90-91 (citing *Coleman v. Thompson,* 501 U.S. 722, 753 (1991)).

The initial delay in this case is attributable to Defendant's requests for additional time to review discovery, prepare pretrial motions, and engage in plea negotiations.  Defendant concedes only that the delay from June 26, 2017 to October 6, 2017 is attributable to the defense.  The remainder of the delay Defendant attributes to the Government and the Court.

First, Defendant argues that the Government was negligent in its obligation to track speedy trial time. (Doc. 27 at 3-4). Defendant asserts that while "the government assumed [Defendant] would file pretrial motions and thereby toll the speedy trial clock … [he], as per his right, decided not to file pretrial motions … [and] [t]he government thereafter failed to track the speedy trial clock and did not inform the Court when time was set to expire." (*Id.*) In support of his prior motion to dismiss, Defendant also argued that the Government was negligent in providing discovery timely. (Doc. 26 at 2-6).

The Court finds that the Government was neither negligent nor acting in bad faith.

As to discovery, the Government made its initial production timely, as Defendant repeatedly acknowledged. That the Government needed to supplement its initial discovery production is by no means uncommon nor unreasonable. And the email communications exchanged between the prosecutor and defense counsel demonstrate that the Government made every effort to respond to Defendant's supplemental discovery requests and to provide those items as promptly as possible. (Doc. 28-1). Admittedly, there were some delays in production. However, most, if not all, of the delays were caused by circumstances outside the Government's control, *e.g.*, needing to obtain the additional items Defendant requested, addressing technical issues, or having to await the preparation of the production. (*See*, *e.g.*, *id*. at 12, Gov't Email to Defense, Oct. 19, 2017, "I don't have [lab reports] either. I'll get those to you tomorrow. I will also re-burn the videos that did not work. The person who does the redactions is in training and I've asked my agent to follow up on … the 4/7 video … [and] the search warrant photos"). The Government can hardly be faulted for these types of delays.

Accordingly, the Court finds that the Government was not negligent in providing discovery, nor that the timing of production was unreasonable.

Further, the Court rejects Defendant's argument as to the Government's alleged negligence in tracking the speedy trial clock. Defendant argues that he was not required to file pre-trial motions, which is entirely accurate. However, based on defense counsel's representations, the Government innocently, albeit mistakenly, anticipated that Defendant would either file pre-trial motions or would communicate intent to forego filing. (Doc. 28 at 3). The Government's assumption was entirely reasonable and, indeed, was precisely what this Court assumed as well. The Government also interpreted the July 25, 2017 notation order as the Court giving Defendant sufficient time to review discovery and file late motions if needed. Indeed, this was precisely what the Court intended. Thus, the Government's interpretation was not only reasonable, but accurate.

Conversely, the notion that the Government should somehow intuit Defendant's **unspoken** intent to forego filing pretrial motions, and should then be held responsible to notify the Court of the resulting speedy trial issue, is unfair.[9] So too is the notion that any party should be permitted to reap the rewards of having successfully deceived the Court

---

[9] Defense counsel similarly insinuates that her decision not to file a reply brief, without any notice whatsoever, should retroactively render defense motions ripe for decision as of the date of the Government's opposition. (Doc. 24 at 5, 6; Doc. 27 at 4, 5). And defense counsel supports this proposition by citing to this Court's own Order in an unrelated case, *United States v. Keno Phillips*, wherein this Court expressly rejected this very argument. (Doc. 24 at 6; *United States v. Phillips*, No. 1:15-CR-104, 2017 WL 3129135, at *5 (S.D. Ohio July 24, 2017) ("The fact that the response reasonably expected by the Court was never filed does not retroactively restart the speedy trial clock. To hold otherwise would unexpectedly leave the Court with one week to rule on a motion, simply because the opposing party chose not to file anything … [and] would reward the moving party for failing to reach out to opposing counsel in advance to determine whether the motion could be deemed unopposed at the outset").

and opposing counsel. While the Government certainly has the obligation to track speedy trial, it is inherent to assume that opposing counsel is acting in good faith. Here, defense counsel's failure to notify anyone of her client's decision not to file pretrial motions, and to then take advantage of her own failure to communicate, was sharp practice and should not serve as a means to pass blame onto the Government. Although the Government acted on ultimately erroneous assumptions, there is nothing to indicate bad faith or negligence on its part.

Defendant also argues that the Court negligently caused delay in his case by failing to act on his first motion to dismiss. (Doc. 27 at 4-6). Specifically, Defendant argues that this Court "should have ruled on [Defendant's] speedy trial motion by Thursday, March 29, 2018," and that "61 days have passed since the speedy trial motion should have been decided." (*Id.* at 4).[10]

First, Defendant assumes that merely because he did not request a hearing, that his motion is automatically ripe for decision as soon as it is briefed. (Doc. 27 at 3, n.1). Whether a hearing is helpful or necessary is a matter for the Court to decide, not the parties. And, here, this Court fully intended to set Defendant's initial motion to dismiss for hearing.

Specifically, the Government's response in opposition to the motion to dismiss referenced a number of email communications, which emails were said to evidence ongoing plea negotiations. (Doc. 25 at 5, n.1). The Government did not elaborate

---

[10] Defendant also notes that the Court did not rule on his bond motion. (Doc. 27 at 4). While accurate, the pendency of that motion was not responsible for any delay.

further, concluding that plea negotiations would not have automatically tolled time. (*Id.* at 5). However, as this Court explains, *supra*, plea negotiations do indeed toll time automatically. Accordingly, this Court intended to give the Government an opportunity to present this evidence at a hearing, in order for the Court to determine whether time was actually tolled by virtue of those plea negotiations.

Subsequently, however, Defendant filed the second motion to dismiss (Doc. 27), and the Court awaited briefing to determine whether both motions may require a hearing and perhaps whether the motions could be heard together. The Court's decision to wait was not inactivity or negligence, but a considered decision, based on how the Court believed, in its discretion, it could best manage its own substantially overcrowded docket. *Cf. Henderson*, 476 U.S. at 329-30 ("the phrase 'or other prompt disposition' in [18 U.S.C. § 3161(h)(1)(D)] does not imply that only 'reasonably necessary' delays may be excluded between the time of filing of a motion and the conclusion of the hearing thereon").

The second motion to dismiss was not fully briefed until July 4, 2018, *i.e.*, the day after the Court reasonably expected to receive Defendant's reply. Once briefing was concluded, the Court found upon review that the Government had attached its previously referenced emails to its response to Defendant's second motion to dismiss and further elaborated on the timing of when plea negotiations began and ended. (Doc. 28-1). Upon further consideration, the Court concluded that a hearing on the original motion to dismiss was no longer required. The Court also determined that it would proceed to rule on the second motion to dismiss without a hearing.

Thus, the time that elapsed beginning with the filing of the original motion to dismiss through the date 30-days after the second motion to dismiss was ripe for decision (*i.e.*, at least August 4, 2018) is all reasonably attributable to Defendant's own filings. Accordingly, the Government cannot be "more to blame," if at all, for that period of delay. *See Doggett*, 505 U.S. at 651.

The Court again acknowledges its role in the delay since the motions became ripe for decision. However, this delay is based entirely on the "neutral reason" of the Court's own overcrowded docket. *See Barker*, 407 U.S. at 531 ("A more neutral reason such as negligence or overcrowded courts should be weighted less heavily…").

In sum, the reasons for the delay throughout the entirety of this case are either neutral as to both parties or are attributable to Defendant. The Government is certainly not "more to blame" for the delay than Defendant and defense counsel. Accordingly, the second factor weighs against dismissal.

The **third** factor is Defendant's assertion of his right. "Whether and how a defendant asserts his right is closely related to the other factors," in that "[t]he strength of [a defendant's] efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences." *Barker*, 407 U.S. at 531. Stated simply, "[t]he more serious the deprivation, the more likely a defendant is to complain." *Id*. Thus, the Supreme Court has "emphasize[d] that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id*. at 532.

Here, Defendant's only assertion of his right to a speedy trial arises from the filing of his motions to dismiss. Indeed, quite the contrary to asserting his right to a speedy trial, Defendant had sought an extension of time and two subsequent continuances in this case, the last of which was not even time-limited. (Docs. 16, 17, 20). And though Defendant initially sought to maintain his trial setting (Doc. 16), he subsequently acknowledged that his need for additional time necessitated continuing the trial date (Doc. 17).

Accordingly, the third factor weighs against Defendant.

Finally, the **fourth** factor is any resulting prejudice to Defendant. In *Barker*, the Supreme Court explained that:

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect … [including]: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Barker*, 407 U.S. at 532.

Notably, "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 656. The Sixth Circuit has elaborated, however, that "[i]n this circuit, '[w]hen the government prosecutes a case with reasonable diligence, a defendant who cannot demonstrate how his defense was prejudiced *with specificity* will not make out a speedy trial claim no matter how great the ensuing delay.'" *Young*, 657 F.3d at 418 (quoting *United States v. Howard,* 218 F.3d 556, 564 (6th Cir.

2000)) (emphasis in original); *see also United States v. Robinson*, 455 F.3d 602, 608 (6th Cir. 2006) (noting that, in the absence of particularized trial prejudice, "[s]horter delays [(*e.g.*, thirteen and one-half months versus six-years)] attributable to the government's negligence have been held not to give rise to a presumption of prejudice").

As to the "most serious" interest, Defendant does not raise any specific claims of trial prejudice. Further, the Government notes that "[t]he entirety of the Defendant's conduct that is relevant to the indictment is on video … [which] was available to the Defense on May 30, 2017 … [and] [n]othing about the video has changed." Thus, the passage of time would not have rendered the evidence less reliable.

Defendant does assert non-trial prejudice arising from his continued incarceration. Pretrial detention is a significant deprivation to any defendant. Here, the Court agrees the delay has contributed to Defendant's non-trial prejudice.

As non-trial prejudice carries less weight than trial prejudice, the Court deems this fourth factor as weighing neither in favor of or against either party.

Having considered each of the *Barker* factors, the Court finds the delay has not deprived Defendant of his constitutional right to a speedy trial. Accordingly, dismissal under the Sixth Amendment is not warranted.

## IV. CONCLUSION

Based upon the foregoing, Defendant's motion to dismiss under the Sixth Amendment (Doc. 27) is **DENIED**. However, Defendant's motion to dismiss under the Speedy Trial Act (Doc. 24) is **GRANTED**, and the Indictment is hereby **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

Date: <u>February 8, 2019</u>

Timothy S. Black
United States District Judge